1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY,<br><br>                       Plaintiff,<br><br>   v.<br><br>GABAI CONSTRUCTION, *ET AL.*,<br><br>                      Defendants | Case No. 13-cv-01881-BAS(DHB)<br><br>**ORDER GRANTING MOTION FOR CONFIRMATION OF GOOD FAITH SETTLEMENT**<br><br>(ECF No. 58) |
| AND RELATED CROSS-CLAIMS | |

      Plaintiff Travelers Commercial Insurance Company ("Travelers") commenced this action on August 13, 2013 against Gabai Construction ("Gabai") alleging strict products liability, breach of implied warranty of fitness, breach of implied warranty of merchantability, breach of contract, negligence, and breach of express warranty. (ECF No. 1.)  On March 10, 2014, Gabai filed a Cross Claim for equitable indemnity, contribution, and equitable apportionment against Roanja Planning, Inc. dba Westside Door & Moulding ("Westside").  (ECF No. 16.)  On April 10, 2014, Travelers filed a First Amended Complaint ("FAC") against Gabai and Fire Protection Group, Inc. ("FPG").  (ECF No. 22.)

Westside now moves this Court to approve the settlement it has reached with Travelers as made in good faith pursuant to California Code of Civil Procedure sections 877, *et seq*., and to dismiss the Cross Claim against Westside.  (ECF No. 58.)  No opposition has been filed.

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Travelers' motion for confirmation of good faith settlement and **DISMISSES** the Cross Claim.

# I.   BACKGROUND

## A.   Statement of Facts

Gabai was the developer and/or general contractor of a residential property located in Beverly Hills, California ("Residence") purchased by Travelers' insureds. (FAC at ¶¶ 2-4, 18.)  Gabai subcontracted with FPG to install a fire sprinkler system in the Residence.  (*Id*. at ¶ 5; ECF No. 58-3 at Exh. C.)  On or about December 2010, Gabai hired Westside, a window and door supplier, to furnish a replacement skylight panel for the central entry-way skylight of the Residence.  (ECF No. 16 at ¶ 7, ECF No. 58-2 at p. 3.)  On May 3, 2011, one of the sprinkler heads installed in a skylight well in the central entryway flooded the home and caused damages paid for by Travelers in the approximate amount of $894,999.06.  (ECF No. 58-2 at ¶ 2; FAC at ¶ 3; ECF No. 16 at ¶ 10.)

Travelers alleges the flood was caused by: (1) "[f]aulty design, construction, remodel and installation of an entry way sky-light;" and (2) "[f]aulty design, construction and installation of a fire sprinkler system."  (FAC at ¶ 19.)  Gabai filed a Cross Claim against Westside alleging that Gabai "hired Westside to furnish a replacement skylight panel for the central entry-way skylight."  (ECF No. 16 at ¶ 7.) According to the Cross-Claim, "[t]he Skylight materials [used by Westside] were different than the prior entry-way skylight panel which it replaced" and thus Westside may be in some way responsible for the resulting flood.  (*Id*. at ¶¶ 9, 11.)

1    As of the date of filing of Westside's motion, three separate theories as to what

2   caused the sprinkler head to trigger had emerged: (1) the wrong sprinkler head was

3   installed; (2) when Westside changed the skylight from domed to flat and from

4   Plexiglas to glass, this increased the temperature in the skylight well and triggered

5   the sprinkler; and (3) the glass bulb which serves as the triggering mechanism for the

6   sprinkler head was damaged.  (ECF No. 58-1 at p. 4.)  Each of the three theories and

7   their relationship to Westside is discussed below.

8    The first theory, which appears to be supported by some documentary evidence

9   supplied in Westside's motion is that an "ordinary" sprinkler head with a 155 degree

10  trigger point was installed, when an "intermediate" sprinkler head with a higher

11  minimum trigger point of 175 degrees should have been installed.  (*Id*. at pp. 4-5.)

12  Westside provides an Installation Guide from the sprinkler head manufacturer noting

13  that "[w]hen residential sprinklers will be exposed to the rays of the sun passing

14  through glass or plastic skylights, use intermediate temperature rated sprinklers."

15  (ECF No. 58-3, Exh. D.)  According to Westside's motion, which is unopposed,

16  experts retained by Travelers, Gabai, and Westside are all in agreement that an

17  intermediate sprinkler head should have been installed.  (ECF No. 58-1 at p. 4.)

18  FPG's expert has taken no position on this issue.  (*Id*.)  Although there is

19  disagreement among the parties as to who installed the sprinkler head, there is no

20  dispute that Westside had no involvement in the supply, installation, or maintenance

21  of any sprinkler heads.  (ECF No. 58-1 at p. 3; ECF No. 58-2 at ¶ 8.)

22    The second theory of liability is that the change in skylight type increased the

23  temperature such that the sprinkler head was then triggered.  (ECF No. 58-1 at p. 5.)

24  According to Westside's motion, which is unopposed, while Traveler's and FPG's

25  experts issued reports suggesting this theory of liability, Gabai's expert directly

26  contradicts this theory.  (ECF No. 58-3, Exh. E.)

27    The third theory of liability has to do with the fragile nature of the glass bulb

28  which serves as the triggering mechanism for the sprinkler head.  (ECF No. 58-1 at

p. 5.)  According to Westside's motion, just prior to the flood, Gabai installed a large steel structure to support a chandelier.  This installation required demolition of a wall and moving the offending sprinkler head physically to one side and then reinstalling it.  (*Id*. at p. 6.)  Thus, it is possible the glass bulb was damaged in the move, and the flood ensued.  Again, Westside had no involvement in the installation of the steel structure or movement of the sprinkler head.  (*Id*.)

### B.    Procedural History

Travelers commenced this action on August 13, 2013 against Gabai alleging strict products liability, breach of implied warranty of fitness, breach of implied warranty of merchantability, breach of contract, negligence, and breach of express warranty.  (ECF No. 1.)  Travelers asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (*Id*. at ¶ 11.)  On March 10, 2014, Gabai filed a Cross Claim for equitable indemnity, contribution, and equitable apportionment against Westside. (ECF No. 16.) On April 7, 2014, Westside filed an Answer to the Cross Claim.  (ECF No. 19.)

On April 10, 2014, Travelers filed the FAC against Gabai and FPG.  (ECF No. 22.)  Again, Travelers asserted diversity jurisdiction.  (*Id.* at ¶ 12.)  On April 28, 2014 and May 5, 2014, Gabai and FPG filed their respective Answers to the FAC.  (ECF Nos. 25, 26.)  On May 5, 2014, FPG filed a Cross Complaint for equitable indemnity against Gabai.  (ECF No. 27.)  Gabai filed an Answer to the Cross Complaint on May 30, 2014.  (ECF No. 31.)

On December 29, 2014, FPG filed a motion for summary judgment or, in the alternative, summary adjudication as to Travelers' FAC.  (ECF No. 42.) The Court granted in part and denied in part the motion for summary judgment on October 19, 2015.  (ECF No. 63.)  Presently before the Court is a motion for confirmation of good faith settlement pursuant to California Code of Civil Procedure §§ 877, *et seq*. filed by Westside requesting that this Court confirm its settlement reached with Travelers.
///

## II.   LEGAL STANDARD

"When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."  *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).  California Code of Civil Procedure sections 877 and 877.6(c) constitute substantive law.  *Id.*; *see also Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511, n. 6 (9th Cir. 1990).  While the rest of section 877.6 is mostly procedural, "nothing is to prevent the district court from granting a motion for an early determination of the good faith question."  *Fed. Sav. & Loan Ins. Corp.,* 904 F.2d at 511.

Section 877.6(a)(2) provides that "a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement," setting forth the settling parties, basis, terms, and amount of the settlement, and a proposed order.  Cal. Civ. Proc. Code § 877.6(a)(2).  "Within 25 days of the mailing of the notice, application, and proposed order, or within 20 days of personal service, a nonsettling party may file a notice of motion to contest the good faith of the settlement."  *Id.*  "If none of the nonsettling parties files a motion within 25 days of mailing . . . , or within 20 days of personal service, the court may approve the settlement."  *Id.*

The court is given broad discretion in deciding whether a settlement is in good faith for purposes of section 877.6.  *Cahill v. San Diego Gas & Elec. Co.*, 194 Cal. App. 4th 939, 957 (2011).  However, discretion is not unlimited and "should be exercised in view of the equitable goals of the statute, in conformity with the spirit of the law and in a manner that services the interests of justice." *Long Beach Mem'l Med. Ctr. v. Super. Ct.*, 172 Cal. App. 4th 865, 873 (2009).  The two major goals of section 877.6 include: (1) the equitable sharing of costs among parties at fault; and (2) the encouragement of settlements.  *Id.* at 872; *see also Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 494-97 (1985).

The court may determine the issue of the good faith of a settlement "on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing." Cal. Civ. Proc. Code § 887.6(b).  Nonexclusive factors the court should take into account in determining whether the settlement is made in good faith include: (1) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; and (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial."  *Mason & Dixon Intermodal, Inc.*, 632 F.3d at 1064 (citing *Tech–Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal.3d 488, 499 (1985)).  "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants."  *Id.* (citing *Tech-Bilt, Inc.*, 38 Cal.3d at 499); *see also Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 512 (9th Cir. 1990) ("[T]he provisions of section 877 require that any settlement that cuts off the right of contribution by nonsettling defendants must be in good faith."); *N. Cnty. Contractor's Ass'n. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1089-90 (1994) ("Good faith may be found only if there has been no collusion between the settling parties and where the settlement amount appears to be within the 'reasonable range' of the settling party's proportionate share of comparative liability for a plaintiff's injuries.").

"The party asserting the lack of good faith shall have the burden of proof on that issue."  Cal. Civ. Proc. Code § 887.6(d).  That party must show that the settlement is "so far 'out of the ballpark'" as to be inconsistent with the equitable goals of section 877.6.  *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

"A party which receives court approval of a settlement is entitled to a dismissal of the action."  *Great W. Bank v. Converse Consultants, Inc.*, 58 Cal. App. 4th 609, 613 (1997).  "A cross-defendant who has not been named as a defendant in the main

1   action may enter into a good faith settlement with the plaintiff in the main action and

2   obtain a dismissal of the cross-complaint pursuant to Code of Civil Procedure section

3   877.6." *Id.* (citation omitted).  "However, such a settlement should be carefully

4   scrutinized to ensure the settlement is reasonable, not collusive or fraudulent, and

5   made in good faith." *Id.*  (citation omitted).

6   **III.    DISCUSSION**

7       **A.    Subject Matter Jurisdiction**

8       The Court has diversity jurisdiction over the FAC.  *See* 28 U.S.C. § 1332(a)(1).

9   The Court has subject matter jurisdiction over the Cross Claim pursuant to 28 U.S.C.

10   § 1367 which "permits a federal court to exercise supplemental jurisdiction over a

11   cross-claim between non-diverse defendants, providing such claim is ancillary to a

12   matter over which the court already has jurisdiction."  *Pilavskaya v. Henderson*, No.

13   CV 11-4075 CAS (Ex), 2012 WL 3279517, at *4 (C.D. Cal. Aug. 9, 2012); *see also*

14   *Glen Falls Indem. Co. v. U.S. ex rel. Westinghouse Elec. Supply Co.,* 229 F.2d 370,

15   373-74 (9th Cir. 1955); *Meritor Sav. Bank v. Camelback Canyon Investors*, 783 F.

16   Supp. 455, 457 (D. Ariz. 1991).

17       **B.    Good Faith Settlement**

18       Westside moves this Court to approve its settlement with Travelers of

19   $7,500.00, which is considerably less than the $894,999.06 Travelers allegedly paid

20   to its insureds as a result of the flood.  Westside states the settlement is "only an

21   attempt to extricate Westside from this lawsuit where none of the evidence even

22   suggests that Westside might have responsibility for the subject flooding incident."

23   (ECF No. 58-2 at ¶ 17.)  Of great weight to the Court is the fact that no party opposes

24   this motion.

25       According to Westside, the only theory of liability that could possibly

26   implicate Westside is that installation of the new skylight caused the temperature to

27   rise and triggered the sprinkler head.  However, Westside has shown that the expert

28   retained by Gabai, the cross-plaintiff, explicitly contradicts this theory.  Moreover,

1   even under this theory of liability, the fact that whoever installed the sprinkler system

2   installed an "ordinary" sprinkler head with a trigger point of 155 degrees is

3   significant.   There is no allegation that, as a skylight installer, Westside was

4   responsible for installing the sprinkler head or assessing whether the newly-installed

5   skylight would be appropriate for the currently installed sprinkler system.

6          In light of these unopposed contentions, the Court agrees that the sum of

7   $7,500.00 "in exchange for a release from any past, present or future liability to

8   [Travelers] or its insureds arising out of the flood incident that forms the basis for

9   this lawsuit," with each party to bear its own costs and fees, is a good faith attempt

10   to extricate Westside from the lawsuit, when there is no evidence that Westside is

11   likely to be found liable were a trial to ensue.  (*See* ECF No. 58-1 at pp. 2-3.)  There

12   is no evidence of fraud or collusion in the settlement agreement between Westside

13   and Travelers.  Travelers, as the only plaintiff, will receive the entire settlement, and

14   this Court has been given no information about the financial viability of Westside.

15   After considering all of the *Tech-Bilt* factors, the Court concludes the settlement was

16   reached in good faith under California Code of Civil Procedure section 877.6.

17          As the Court finds the settlement to be in good faith, Westside is entitled to

18   dismissal.  *See Great W. Bank*, 58 Cal. App. 4th at 613.  "A determination by the

19   court that the settlement was made in good faith shall bar any other joint tortfeasor

20   or co-obligor from any further claims against the settling tortfeasor or co-obligor for

21   equitable comparative contribution, or partial or comparative indemnity, based on

22   comparative negligence or comparative fault."  Cal. Civ. Proc. Code § 877.6(c); *see*

23   *also* Cal. Civ. Proc. Code § 877(b) ("Where a release . . . is given in good faith before

24   verdict or judgment . . . [i]t shall discharge the party to whom it is given from all

25   liability for any contribution to any other parties."); *Bay Dev., Ltd. v. Super. Ct.*, 50

26   Cal. 3d 1012, 1029-33 (1990) (claims seeking implied contractual indemnity barred

27   by finding of good faith); *Far West Fin. Corp. v. D&S Co., Inc.*, 46 Cal. 3d 796, 817

28   (1998) (all equitable indemnity claims, including total equitable indemnity claims,

1  barred by finding of good faith).   In the Cross Claim, Gabai seeks equitable
2  indemnity, contribution, and equitable apportionment.  Accordingly, the Cross Claim
3  of Gabai against Westside is hereby **DISMISSED**.

4  **IV.   CONCLUSION & ORDER**

5      For the foregoing reasons, Westside's motion for confirmation of good faith
6  settlement (ECF No. 58) is **GRANTED** and the Cross Claim against Westside (ECF
7  No. 16) is **DISMISSED**.

8      **IT IS SO ORDERED.**

9

10 **DATED:  November 6, 2015**

11 Hon. Cynthia Bashant
   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28